**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>ANDREW GEORGE GORDON,<br><br>                    Debtor | Chapter 7<br>Case No. 15-13893 |

**MEMORANDUM OF DECISION ON
MOTION OF DEBTOR ANDREW GEORGE GORDON TO ENFORCE THE DISCHARGE INJUNCTION
AND ON MOTION OF CITIZENS BANK FOR SANCTIONS UNDER RULE 9011**

I.  **Overview**

The matters before the Court are (i) a motion by the chapter 7 debtor, Andrew George Gordon (the "Debtor"), to enforce the discharge injunction against creditor Citizens Bank, N.A. ("Citizens") and Citizens' attorney, Liam J. Vesley ("Motion to Enforce") and (ii) a cross-motion by Citizens for sanctions against the Debtor's attorney, Alex Hess, under Fed. R. Bankr. P. 9011 for filing the Motion to Enforce ("Motion for Sanctions"). By the Motion to Enforce, the Debtor seeks an order (1) finding that Citizens and Attorney Vesley violated the discharge injunction under 11 U.S.C. § 524(a)(2), (2) requiring them to file amended pleadings in an ongoing state court law suit removing the Debtor's name, (3) requiring them to pay compensatory damages of $3,500 for the Debtor's emotional distress, and (4) requiring them to pay the Debtor's attorney's fees and costs in reopening his case and prosecuting this motion. Citizens opposes the Motion to Enforce and requests sanctions against the Debtor's attorney, Alex Hess, Esq., pursuant to Fed. R. Bankr. P. 9011 for filing it. Following a hearing and for the reasons stated below, the Court will deny both motions.

II.  **Facts and Procedural History**

The parties do not dispute the underlying facts.  In September 2003, Citizens loaned $150,000 to Omega Advertising, Inc. ("Omega"). The loan was evidenced by a promissory note from Omega to

Citizens, secured by a security interest on Omega's assets, and personally guaranteed by the Debtor. In December 2005, Omega changed its name to Direct Impact Group, Ltd. ("Direct"). Direct eventually defaulted on the note, whereupon Citizens made demand upon Direct, as borrower, and upon the Debtor, as guarantor, for full payment of all amounts due on the note and guaranty.

On September 10, 2015, Citizens brought suit in Massachusetts Superior Court against both Direct and the Debtor. Citizens served a summons and the complaint on the Debtor but was unable to serve process on Direct. Neither the Debtor nor Direct responded to the complaint or appeared in the Superior Court action.

On October 7, 2015, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code, commencing the present bankruptcy case. In his schedule of personal property, the Debtor listed his 100 percent ownership interest in Direct as an asset and valued the same at $1,000 "based upon remaining website domain and goodwill." On his schedule of creditors holding nonpriority unsecured claims, the Debtor listed a $139,055 liability to Citizens. Citizens admits to having received notice of the Debtor's bankruptcy filing. On August 23, 2016, the Court entered a chapter 7 discharge in favor of the Debtor and subsequently closed the Debtor's chapter 7 case. Citizens does not contend it did not receive notice of the Debtor's discharge.

On September 19, 2016, upon learning that Direct still operated an active website, Attorney Vesley filed with the Superior Court a Notice of Dismissal as to the Debtor and a Motion to Extend Time to Make Service of Process and for Order of Alternative Service of Process ("Motion for Alternative Service") with respect to Direct. Citizens did not serve the Notice of Dismissal or the Motion for Alternative Service on the Debtor because the Debtor had not made an appearance in the case, and Massachusetts Rule of Civil Procedure 5(a) does not require service on a party in default for failure to appear. The Superior Court allowed the Motion for Alternative Service and thus permitted Citizens to

make service upon Direct by first-class mail and certified mail addressed to its president and registered agent, the Debtor.

On or about October 3, 2016, Citizens, through Attorney Vesley, effected this service by first-class mail and by certified mail to the Debtor at his home address. The mailing included the state court complaint, a summons, and a cover letter.  The complaint was the original complaint that Citizens had filed in the action. It identified the Debtor as a defendant in its caption and stated a claim against him, to enforce his guaranty.  Attached to the complaint as an exhibit was a demand letter seeking payment from the Debtor. The summons that was included in the service packet was addressed to Direct alone. It began, "To the above-named Defendant:  Direct Impact Group, Ltd." The cover letter identified its addressee as follows:

> Andrew G. Gordon, President and Registered Agent
> Direct Impact Group, Ltd.

The letter stated that "Direct Impact Group, Ltd. is hereby served with the following: 1. Summons; 2. Verified Complaint." It made no other reference to the Debtor and did not state that he was thereby served in his individual capacity. However, the letter contained no language of clarification about the purpose of the enclosed service, to avoid doubt or confusion, such as: that the enclosed summons and complaint were not thereby being served on the Debtor in his individual capacity; that, despite the fact that the Debtor was named as a defendant in the enclosed complaint and the packet was mailed to him (albeit in his capacity as president and registered agent of Direct Impact Group), the enclosed service was not an attempt to proceed against him individually; that Citizens recognized that his discharge barred prosecution of the claim against the Debtor that was stated in the enclosed complaint, and that Citizens intended to honor the discharge; or that Citizens had already filed a notice of dismissal as to the Debtor.

Following receipt of the service packet, the Debtor, through counsel, filed a motion to reopen his chapter 7 case and the instant Motion to Enforce.  He filed the Motion to Enforce on November 10,

3

2016. With the Motion to Enforce, Debtor's counsel, Attorney Hess, filed an exhibit entitled "October 5, 2016 Service Packet" but failed to include in that exhibit Citizens' cover letter. On November 23, 2016, Citizens filed a "Combined Response/Opposition" to the motion to reopen and Motion to Enforce. In the same document, Citizens also moved for sanctions against Attorney Hess pursuant to Fed. R. Bankr. P. 9011 (the "Motion for Sanctions"). It sought sanctions for Hess's (i) filing the Motion to Enforce, which Citizens argued was frivolous and without evidentiary support; (ii) omitting the cover letter from his "Service Packet" exhibit to the Motion to Enforce; and (iii) falsely asserting in the Motion to Enforce that Hess had filed a suggestion of bankruptcy in the Superior Court action when in fact Vesley, not Hess, had filed the suggestion of bankruptcy.

On December 20, 2016, the Court held a hearing on both motions. At the hearing, Attorney Hess (1) conceded that he had not included Citizens' cover letter in the service packet that he had filed as an exhibit, (2) admitted that Citizens had filed the Suggestion of Bankruptcy in the Suffolk Superior Court, and (3) stated that Attorney Vesley had notified Attorney Hess by email of purported errors and given Attorney Hess an opportunity to withdraw his motion prior to filing Citizens' opposition and Motion for Sanctions. Following the hearing, the Court allowed the Debtor's motion to reopen his case for the limited purpose of adjudicating the Debtor's Motion to Enforce, and the Court took the Motion to Enforce and Citizens' Motion for Sanctions under advisement.

### III.    Positions of the Parties

#### A.  The Debtor

The Debtor seeks sanctions and an order enforcing the discharge injunction under 11 U.S.C. §§ 105(a) and 524(a)(2) against Citizens and Attorney Vesley. The Debtor states that the specific steps Citizens, by Vesley, intentionally took to coerce and demand payment from him, and which were in violation of the discharge injunction, were as follows: (1) Citizens' filing of the Motion for Alternative Service of Process in state court without serving him pursuant to Massachusetts Rule of Civil Procedure

4

9A; (2) Citizens' denying him an opportunity to be heard on its Motion for Alternative Service of Process by representing to the state court that the motion was without opposition and by failing to schedule a hearing on and serve notice of the motion; (3) Citizens' service on the Debtor, on October 3, 2016, of the Notice of Default and Demand for Payment with originally-filed complaint naming the Debtor jointly and severally liable on all causes of action and demanding judgment against him; and (4) Citizens' failure to serve the Notice of Dismissal on him before re-serving him with the state court complaint.

The Debtor contends that Citizens' act of re-serving the original complaint and its exhibits, including the demand letter addressed to him, on him at his home address was an act to collect the discharged debt from him and to coerce him into paying it. The Debtor notes that while Citizens contends that by this act it served only Direct, the complaint and exhibits in the service packet still listed the Debtor as a party and sought to hold him liable for the discharged debt. The Debtor argues that Citizens' service of papers that continued to list the Debtor as a liable party, coupled with Citizens' failure to serve the Debtor with the notice of the Debtor's dismissal from the Superior Court action, constituted an objectively coercive effort to harass, intimidate, and coerce him into paying the discharged debt. The Debtor asserts that he has suffered extreme emotional distress as a consequence of these alleged discharge violations. He seeks sanctions of $3,500 as compensatory damages for this emotional distress, plus the cost of reopening his bankruptcy case and attorney's fees.

**B.  Citizens**

Citizens opposes the instant motion and argues that it did not attempt to collect personally from the Debtor but rather from Direct as a separate entity. The cover letter accompanying the service packet was addressed to the Debtor only in his capacity as president and registered agent of the corporate entity and clearly identified Direct as the only entity being served with the state court complaint. Citizens notes that while the Debtor had received a discharge, Direct was still liable for the debt in question.  Service of process could not be effectuated on Direct at its business address.  Accordingly,

5

Citizens contends, it had no other option but to serve Direct at the address of its president and registered agent, who was the Debtor. Citizens notes that it properly acquired an Order of Alternative Service of Process from the Suffolk Superior Court, allowing Citizens to make service on Direct in this manner. Citizens contends that its act of mailing to the Debtor's address a service packet that indicated that only Direct was being served was not objectively coercive and accordingly did not constitute a violation of the discharge injunction.

In its response to the Debtor, Citizens also seeks sanctions against Debtor's counsel, Attorney Hess, pursuant to Fed. R. Bankr. P. 9011 on three grounds. First, Citizens contends that the Motion to Enforce was frivolous because the underlying conduct, which was aimed exclusively at Direct, was plainly not an attempt to collect a debt from the Debtor. Second, Citizens states that Attorney Hess made a misrepresentation when, in the Motion to Enforce, he claimed to have filed a suggestion of bankruptcy in the Superior Court action, when, in actuality, it was Attorney Vesley who filed the suggestion of bankruptcy. Third, Citizens notes that when Attorney Hess filed the current motion, he failed to include the cover letter accompanying the service packet, which stated that Direct was being served and addressed the Debtor only in his capacity as the president and registered agent of Direct. Citizens contends that this omission was a deliberate and strategic mischaracterization of the facts by Attorney Hess. Citizens argues that Attorney Hess's misstatement and omission were intended to mislead the court, and such behavior warrants sanctions under Fed. R. Bankr. P. 9011.

IV.     Discussion

   A.  **Standard for a Violation of the Discharge Injunction**

A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2); *Pratt v. Gen. Motors Acceptance Corp.* (*In re Pratt*), 462 F.3d 14, 17 (1st Cir. 2006). To prove a discharge

injunction violation, a debtor must establish that the creditor "(1) has notice of the debtor's discharge …; (2) intends the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor." *Bates v. CitiMortgage, Inc.* (*In re Bates*), 2016 WL 7229754, at *2 (1st Cir. 2016) (quoting *Best v. Nationstar Mortgage LLC*, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015) (*quoting Lumb v. Cimenian* (*In re Lumb*), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009))).

Courts employ an objective standard in determining whether a creditor's actions are coercive, and they make a fact-specific determination on a case by case basis. *In re Lumb*, 401 B.R. 1, at 6–7; *see also In re Pratt*, 462 F.3d at 19; *In re Schlichtmann*, 375 B.R. 41, 95 (Bank. D. Mass. 2007). A creditor's actions must be "objectively coercive" to be deemed a violation of the discharge injunction. *See In re Lumb*, 401 B.R. at 6–7; *In re Pratt,* 462 F.3d at 19; *In re Schlichtmann*, 375 B.R. at 95. Actions that are "tantamount to a threat" and serve to put the debtor "between a rock and a hard place" are coercive. *In re Lumb*, 401 B.R. at 1 (citing *In re Jamo*, 283 F.3d 392, 402 (1st Cir. 2002); *In re Diamond,* 346 F.3d 224, 227–28 (1st Cir. 2003). Even the exercise of legitimate state law rights may improperly violate the discharge injunction when those rights are exercised in a coercive manner. *In re Pratt*, 462 F.3d at 19.

However, the discharge injunction does not enjoin all communication from a former creditor. Not all post-discharge communication between a creditor and debtor is coercive. Communication sent to the debtor that is merely "informational" is not a violation of the discharge injunction. *See Bates v CitiMortgage, Inc.,* 2016 WL 7229754, at *3 (holding that form 1099-A sent by the IRS was not violation of discharge because the form did not demand payment but provided tax information); *Best v. Nationstar Mortgage LLC*, 540 B.R. 1, 10-11 (1st Cir. B.A.P. 2015) (finding that letters sent to a former debtor referencing an unpaid loan balance and the possibility of foreclosure were not in violation of discharge because the letters merely informed the debtor of what could legally happen if payments were not made). Additionally, the discharge injunction protects only against the collection of a discharged debt and is not a lifelong shield against other bad conduct by a former creditor. *In re*

7

*Schlichtmann*, 375 B.R. 41, 95-6 ("If an act is not in fact one to collect or enforce a prepetition debt, then whatever its faults, it is not a violation of the discharge, even though undertaken by the holder of a discharged debt.").

    **B.**   **Analysis of Citizens' Alleged Violation of the Discharge Injunction**

In the instant case, the Court entered the Debtor's chapter 7 discharge on August 23, 2016. Citizens concedes that its claim against the Debtor under the guaranty is subject to this discharge. Citizens was therefore statutorily enjoined "against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" the guaranty "as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Nonetheless, the discharge did not abate or affect any liability of a third party for the discharged debt. 11 U.S.C. § 524(e) ("Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."). Direct remained liable—as liable as it was before entry of discharge—to Citizens on the primary obligation, and the Debtor's discharge did not enjoin Citizens' enforcement of its rights against Direct. However, when Citizens elected to proceed against Direct by resumption of a civil action that it had commenced in part to enforce its guaranty against the Debtor, and to do so by service on Direct through the Debtor, the discharge did require that Citizens exercise care that it not appear to the Debtor to be proceeding against him on the guaranty.

The Debtor asserts that Citizens' post-discharge actions violated the discharge injunction. Accordingly, the Debtor must show that Citizens (1) had notice of the discharge, (2) intended the actions that constituted the violation of the discharge injunction, and (3) acted in a way that improperly coerced or harassed the debtor. *In re Lumb*, 401 B.R. 1 at 6. There is no dispute that Citizens received notice of the discharge or that it intended the various actions by which it is alleged to have violated the discharge. The first two elements are thus satisfied. With respect to each of the four allegedly contemptuous

8

actions, the dispute is over the third element: whether or not, by an objective standard, Citizens' conduct was coercive.

The Debtor complains of four actions. The first two concern Citizens' filing and prosecution of its Motion for Alternative Service of Process in the Superior Court action: (1) Citizens' filing of the Motion for Alternative Service of Process in state court without serving him pursuant to Massachusetts Rule of Civil Procedure 9A; and (2) Citizens' denying him an opportunity to be heard on its Motion for Alternative Service of Process by representing to the state court that the motion was without opposition and by failing to schedule a hearing on and serve notice of the motion. Neither of these actions constituted an attempt to coerce the Debtor into paying the discharged debt. The Motion for Alternative Service of Process sought to advance the Superior Court action only against Direct; the Debtor does not contend otherwise. Moreover, at all relevant times, the Debtor was unaware of this motion and its prosecution. It therefore cannot have been a means of harassment or intimidation—one cannot be harassed or intimidated by that of which he or she is unaware. Even if Citizens violated state procedural rules by not serving the Motion for Alternative Service of Process on the Debtor and affording him an opportunity to be heard,[1] the resulting injury to the Debtor, if any, was not in the nature of a violation of the discharge. These actions were not, by any objective standard, structured to coerce the Debtor into paying the discharged obligation.

The third and fourth acts of which the Debtor complains are (3) Citizens' service on the Debtor, on October 3, 2016, of the Notice of Default and Demand for Payment with the originally-filed complaint, which sought a judgment holding the Debtor jointly and severally liable on all causes of action, and (4) Citizens' failure to serve the Notice of Dismissal on him before thus re-serving him with the state court complaint. These two acts are, in essence, two parts of a single whole: the failure to serve the notice of dismissal is problematic, the Debtor contends, because by depriving him of

---

[1] I make no ruling on these issues.

9

knowledge of the Notice of Dismissal, Citizens created the condition under which its service of the October 3 service packet on him could and did appear to him to be harassing and coercive. I therefore will consider these two acts as one.

I begin by observing that whatever else it may have been, Citizens' mailing of the October 3 service packet to the Debtor was an attempt by Citizens to effect service of process on Direct. This was evident from the summons, in that it was addressed solely to Direct. It was also evident from the cover letter, first because it identified its addressee as "Andrew G. Gordon, *President and Registered Agent, Direct Impact Group, Ltd*" (emphasis added) and second because it stated that "*Direct Impact Group, Ltd.* is hereby served with the following: 1. Summons; 2. Verified Complaint" (emphasis added). That Citizens was thus attempting to serve process on Direct would have been clear to an attorney. Not having been told otherwise, I assume that the Debtor is not an attorney and has no training in civil procedure. Still, in the particulars noted in this paragraph, the service packet would have given even a layperson cause to believe that perhaps this packet was an attempt to proceed against Direct.

What would have been less clear to a layperson in the Debtor's position—unaware that Citizens had dismissed him from the Superior Court action—is whether this packet was also an attempt to coerce, harass, or intimidate him into honoring his discharged obligation as guarantor. For several reasons, he might reasonably have been concerned. First, the cover letter was addressed to Andrew G. Gordon, "President and Registered Agent,*"* not "*as* President and Registered Agent," much less "*solely as* President and Registered Agent." Each has a different meaning, and Citizens employed the most ambiguous. Second, the packet could not effect service on Direct except through the Debtor. The Debtor understood, correctly, that Citizens intended for the complaint to come into his hands. Third, the complaint had not been amended; by its terms, it continued to seek relief against the Debtor and to include, as an exhibit, the demand letter that Citizens had earlier sent him. And fourth, the cover letter included no language of clarification, to put the Debtor at ease: no indication that the Superior Court

10

complaint had been dismissed as to him, that Citizens recognized and intended to honor his discharge, or that the purpose of the present mailing was solely to proceed against Direct. In these circumstances, the absence of any such language—which would have been easy to include and especially appropriate, given that Citizens was sending the Debtor a complaint it had filed to enforce his guaranty—might itself have been something of a statement.[2] The Debtor thus had reasonable cause for concern that this service packet might have had, as one of its purposes, the enforcement of his obligation on the guaranty, a threat to resume the Superior Court action against him.

      Still, the indicators were ambiguous, and the Debtor surely understood this. He knew that Citizens retained its rights against Direct, that the contents of the mailing gave reason to believe they were aimed at Direct, and that, as a layperson, there was much about the mailing that he did not fully understand. Therefore the Debtor could not be certain that this mailing was an attempt to pressure him into honoring the guaranty; he lacked certainty but had only cause for concern and for further inquiry. He does not indicate that he undertook any inquiry. He could have checked the Superior Court docket, which would have shown the Notice of Dismissal. He might have asked Vesley for clarification. Or he might have asked his own bankruptcy attorney for clarification as to whether the service packet was cause for concern; though counsel could not have known Citizens' intent from the service packet itself, he could at least have informed him that the packet was clearly an attempt to effect service of process on Direct and probably—or at least maybe—nothing more.  None of this appears to have happened.

      At bottom, the inquiry is whether Citizens' mailed the service packet to the Debtor in a manner that served to harass, intimidate, or coerce him. The question here is a close one. Citizens effected service on Direct in a manner that predictably and unnecessarily caused concern about its intentions toward the Debtor. How much such concern is needed to rise to the level of harassment or

---

[2] I do not ascribe to Vesley any intent to make the cover letter intentionally vague, so as to threaten or harass the Debtor, but such an ascription is not a distant leap. The Debtor's concern, and the present motion, are hardly frivolous.

11

intimidation? Though I know of no formula that will decide all cases, I need only determine the present case.

For the following reasons, I hold that Citizens' conduct does not rise to the necessary level. The creation of questions about purpose, especially where those questions are easily resolved and the Debtor makes no inquiry, is not itself harassment or intimidation. The particular concern that Citizens raised in the Debtor was about its intent to resume prosecution of its Superior Court complaint against him. This threat, if real, would have required further action in the Superior Court to accomplish its purpose: Citizens would have had to take steps to further prosecute its complaint. If the Debtor, upon receiving the service packet, had checked the state Superior Court docket to determine what was happening in the civil action, he would have seen the notice of dismissal and, at least with the aid of an attorney, would thereby have been assured that, as against him, the Superior Court complaint had been dismissed and that no further prosecution was in process. Therefore, the concerns and uncertainty that Citizens created by the manner in which it served process on Direct did not mature into full-blown harassment or coercion. By filing its notice of dismissal, Citizens had assured that it could not. I further base my ruling on the unusual complexity of this case:  that though the Debtor's obligation under the guaranty had been discharged, Direct remained liable on the primary obligation, and the Debtor remained Citizens' president and registered agent. While the Debtor was entitled to expect that his discharge would be scrupulously honored, he also had to know that Citizens could and might still, within its rights, continue to proceed against Direct, and, more to the point, to effect service on Direct through him as his president and registered agent. For these reasons, I conclude that despite the concerns it predictably and avoidably raised, Citizens' mailing of the service packet to the Debtor, without more, did not constitute a violation of the discharge injunction.[3]

---

[3] This entire controversy should and might easily have been avoided or obviated from either side. Vesley could easily have allayed predicable concerns by adding a sentence or two of clarification to the cover letter in its service

**C.  Citizens' Motion for Sanctions under Fed. R. Bankr. P. 9011**

Citizens requests sanctions against Debtor's counsel, Attorney Hess, pursuant to Fed. R. Bankr. P. 9011 for filing the Motion to Enforce. Before a party files a motion for Rule 9011 sanctions, it must serve the motion on the party to be sanctioned in accordance with Fed. R. Bankr. P. 7004 and afford that party a twenty-one day period to either withdraw or correct their challenged claim.  Fed. R. Bankr. P. 9011(c)(1)(A).  Compliance with the service requirement is mandatory. *The Cadle Company v. Pratt (In re Pratt)*, 524 F.3d 580, 587-88 (5th Cir. 2008).

In this instance, Citizens did not serve its Motion for Sanctions on Hess before filing it in court. Rather, on November 14, 2016, only nine days before Citizens filed the response in which it requested sanctions against Hess under Rule 9011, Citizens sent Hess an email in which it notified him of alleged errors in the Motion to Enforce and asked that the motion be withdrawn. The email was not in any sense a motion, much less the motion that was filed. Nor did it afford Hess twenty-one days to correct the alleged errors. Rule 9011(c)(1)(A) requires that *the motion itself* be served on the individual or entity against whom sanctions are being sought, and it requires a full  twenty-one day opportunity to withdraw or correct alleged errors. Informal notice does not satisfy the safe-harbor requirement in paragraph (c)(1)(A). *Pratt*, 524 F.3d at 588 (and cases cited); *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) (informal warning letter does not suffice under Fed. R. Civ. P. 11). The Rule 9011 Motion must therefore be denied.

---

packet. The Debtor or his attorney could have checked the state court docket or requested clarification from Vesley.

**V.      Conclusion**

For the reasons set forth above, the Court will, by separate order, deny the Debtor's Motion to Enforce and likewise deny Citizens' Motion for Sanctions.

Date: February 24, 2017      _____
 Frank J. Bailey
 United States Bankruptcy Judge